c to judge____pm

**THE HONORABLE JOHN C. COUGHENOUR**

_____FILED _____ENTERED
_____LODGED_____RECEIVED

APR 28 2003  **PM**

AT SEATTLE
CLERK U S DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                        **DEPUTY**



CV 03 00077 #00000035

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

MAILBLOCKS, INC , a California
corporation,

      Plaintiff,

      v

SPAM ARREST LLC, a Washington limited
liability company,

      Defendant.

NO  CV03-0077C

**DEFENDANT SPAM ARREST'S
DISCLOSURE OF NEWLY
DISCOVERED PRIOR ART IN
SUPPORT OF ITS OPPOSITION
TO PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION**

**ORAL ARGUMENT REQUESTED**

NOTE ON MOTION CALENDAR
April 11, 2003

## I. INTRODUCTION

Defendant Spam Arrest LLC ("Spam Arrest") files this supplemental

memorandum disclosing material prior art invalidating the patents Plaintiff seeks to

enforce (the "Cobb" and "Heiner" patents) which, despite reasonable efforts to do so, was

not available to Defendant at the time of filing its Opposition to Plaintiff's Motion for a

**NEWMAN & NEWMAN, ATTORNEYS AT LAW, LLP**
1001 Fourth Avenue Plaza, Suite 2560
Seattle, Washington  98154
phone  (206) 624-6334
fax  (206) 624-6348

ORIGINAL



1  Preliminary Injunction (the "Opposition")[1]  In addition to the reasons set forth in the

2  Opposition and this Supplemental Opposition, Spam Arrest seeks denial of the

3  preliminary injunction because discovery is likely to produce further evidence of prior art

4  invalidating Cobb and Heiner

5

6  ## II.    PROCEDURAL HISTORY

7        Plaintiff filed and served together with its amended complaint the instant motion

8  for preliminary injunction.  Spam Arrest moved this Court for a continuance to conduct

9  discovery on the grounds that prior art searches would not be available in time for Spam

10  Arrest to discover and analyze prior art searches.  See Def.'s Mot  for Continuance

11  (March 17, 2003) (Dkt  # 14)  On March 28, the Court denied Spam Arrest's request, but

12  noted "[i]n the ruling on the motion for preliminary injunction, the Court will consider

13  defendant's limited opportunity to take discovery."  Order Den. Mot. for Continuance

14  (March 28, 2003) (Dkt  # 28)

15        Spam Arrest recently received responses to the prior art searches and has

16  revisited the responses and data previously received   See Luther Declaration at ¶ 9   On

17  the afternoon of April 22, 2003, Express Search, Inc , a company that conducts patent

18  searches, faxed 12 pages of potential prior art relevant to the Plaintiff's asserted patents

19  See Luther Declaration at ¶ 8, Exhibit A  On April 16, 2003, Spam Arrest requested that

20  Express Search conduct an expedited the prior art search when the results of another

21  search company were incomplete   See Luther Declaration at ¶ 7   Accordingly, Spam

22  Arrest could not have provided the results of the Express Search review to the Court at

23  the time of filing the Opposing   Furthermore, Spam Arrest has conducted a diligent

24  review (in light of the time available) of the potential prior art and the relevant witnesses.

25  See generally Luther Declaration

26

27        [1]Defense counsel spoke with opposing counsel to disclose its intent to file the instant document
Defense counsel indicated, and Plaintiff agreed, that Plaintiff should have a reasonable opportunity to respond

28  and rebut the arguments asserted herein

DEF  SPAM ARREST'S SUPPLEMENTAL
OPPOSITION TO PL 'S
MOT  FOR PRELIM  INJ - 2
Case No  CV03-0077C

NEWMAN & NEWMAN, ATTORNEYS AT LAW, LLP
1001 Fourth Avenue Plaza, Suite 2560
Seattle, Washington  98154
phone  (206) 624-6334
fax  (206) 624-6348

## III.  THE NEWLY DISCOVERED PRIOR ART INVALIDATES PLAINTIFF'S ASSERTED COBB AND HEINER PATENTS

The two asserted patents at issue, which were filed in 1997 (Cobb) and 1998 (Heiner), are anticipated and obvious because of existing material prior art.  Spam Arrest's Opposition to Plaintiff's Motion for Preliminary Injunction (the "Opposition") demonstrated that a 1992 IBM publication authored by Cynthia Dwork and Moni Naor (hereinafter, "1992 IBM Publication") (see Opposition at p.3) rendered both of Plaintiff's patents invalid pursuant to 35 U S C §§ 102-03 because the 1992 IBM Publication taught and disclosed the claimed inventions several years before an application for either of the patents in suit was filed[2]  In addition to the 1992 IBM Publication, Spam Arrest provides the following prior art which invalidates the  asserted Cobb and Heiner patents

### A.  The 1992 IBM Publication, read in conjunction with the author's subsequent 1996 publication anticipate and render obvious Cobb and Heiner.

The 1992 IBM Publication discloses the method for filtering unsolicited mail asserted in Heiner and Cobb  The 1992 IBM Publication's disclosure for combating junk mail teaches that a sender must either (i) compute a simple function which is simple for a human but difficult to reproduce by a software program or be compared against an approved list of senders (a "whitelist") or a blocked list of senders (a "blacklist"), (ii) and send the result of the function to a destination to be verified, accepted, and (iii) routed to a reader  These steps are the essence of Cobb and Heiner and the technology employed by Spam Arrest.

---

[2]As noted in the Opposition, 35 U S C §103 provides, in pertinent part,
> A patent may not be obtained though the invention is not identically disclosed or described as set forth in (35 U S C §102), if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would leave been obvious to a person having ordinary skill in the art to which said subject matter pertains

Obviousness, and non-patentability or invalidity, are questions of law to be determined after a series of potential fact questions are determined, which include (1) the scope and content of the prior art, (2) the differences between the art and the claims at issue, and (3) the level of ordinary skill in the art  Specialty Composites v  Cabot Corp , 845 F 2d 981 (Fed Cir  1988)

---

NEWMAN & NEWMAN, ATTORNEYS AT LAW, LLP
1001 Fourth Avenue Plaza, Suite 2560
Seattle, Washington 98154
phone (206) 624-6334
fax (206) 624-6348

1　　　The 1992 IBM Publication anticipates and renders obvious Cobb and Heiner, in

2　part, because, with regard to a private sender, (as compared, for example, to junk bulk

3　mailing) a "personal letter" may be composed based on "time" proportional to the time

4　taken to compose the letter  Id. Such "time" proportional to a human-generated personal

5　letter necessarily can only come from the human input of an individual's letter

6　composition when confronted with a verification process to access an e-mail recipient.

7　　　Further, the existence of a "frequent correspondent list" of senders from whom

8　messages are accepted without verification identification, and a list of senders to whom

9　access is categorically denied, inherently suggests that new unknown senders will be

10　routed a verification request, such as a function dependent upon the time a personal letter

11　can be composed, to gain access to the recipient  Id  Thus, according to the 1992 IBM

12　Publication, when a sender contacts a recipient by e-mail, at some point in time a

13　challenge verification is sent to the sender  For example, as discussed in the 1992 IBM

14　Publication, a sender is notified when a transmission fails. Heiner and Cobb are

15　inherently disclosed in the 1992 IBM Publication article as a logical next step, as it is a

16　"natural result flowing from the operation as taught". Continental Can Co  v  Monsanto

17　Co., 948 F 2d 1264, 1269 (Fed. Cir. 1991).

18　　　The 1992 IBM Publication was further explained in a publication by its author,

19　Moni Naor, in a September 13, 1996 publication entitled "Verification of a human in the

20　loop or Identification via the Turing Test" (the "Naor Turing Test")[3]  The Noar Turing

21　Test informs and teaches the 1992 IBM Publication by the incorporation of a commonly

22　used verification process called a "Turing test.[4]" See 1996 Naor Turing Test Publication

23

24　　　　[3]Cited in *Proceedings of 38th Annual Symposium on Foundations of Computer Science*, IEEE, 1997,
25　Bellare *et al* , Does Parallel Repetition Lower the Error in Computationally Sound Protocols, at footnote 28,
　　attached as Exhibit D to Luther Declaration  See also, "Fighting Spam May Be Easier Than You Think", by
26　Cynthia Dwork, Microsoft Research SVC, attached as Exhibit E to Luther Declaration  Ms Dwork was the co-
　　author of the 1992 IBM Publication
27

28　　　　[4] The Turing test process is named after British mathematician, Alan Turing from his 1950 article
　　originally published in *MIND  A Quarterly Review of Psychology and Philosophy*, VOL  LIX  No 236, October,

DEF SPAM ARREST'S SUPPLEMENTAL
OPPOSITION TO PL 'S
MOT FOR PRELIM INJ - 4
Case No  CV03-0077C

NEWMAN & NEWMAN, ATTORNEYS AT LAW, LLP
1001 Fourth Avenue Plaza, Suite 2560
Seattle, Washington 98154
phone (206) 624-6334
fax (206) 624-6348

1  (discussing Turing Test), Attached as Exhibit C to Luther Declaration.  The Turing test,

2  invented in 1950, presents an individual with a distorted image of a sequence of

3  character, usually a random mix of letters and numbers. While humans can easily

4  decipher the jumble, software programs cannot   In the Noar Turing Test publication, the

5  author references the 1992 IBM Publication regarding "combating junk e-mail" and

6  proposes that a Turing test would be useful for the human review component of the

7  process   See Noar Turing Test at p.4   The publication provides, in pertinent part.

8   Dwork and Noar proposed a method for combatting junk e-
9   mail . . . They suggested that in order for one user to send a
    message to another user the sender should compute a
10  moderately hard function  . of the content of the letter and
    the name of the addressee, this way demonstrating that the
11  receiver's attention is important for the sender. The current
    proposal [regarding use of a Turing test] is also applicable for
12  the junk mail scenario· to send a letter to a user, the sender
    sends the message and receives a [Turing test] challenge

13  Id.  The Naor Turing Test anticipates or renders obvious Cobb and Heiner   The process is

14  said to work by a server sending a form to a user's request with a "human-in-the-loop

15  challenge" specifically tailored to be answered by a human.

16      In the same manner as Noar Turing Test, as shown, both Cobb and Heiner employ

17  services through which mail is passed from sender to server and back again before it is

18  received by the final destination server or the recipient's e-mail account   As shown, both

19  describe the use of the standard protocol of Simple Mail Transfer Protocol ("SMTP") to

20  receive and process e-mail before it is sent to the recipient   See, e.g., Cobb, Col. 6, lines

21  12 et seq  (disclosing its mail server SMTP system), see also, Heiner, Col. 3, liens 39 et

22  seq , (also disclosing methodology as processing e-mail via an SMTP server sending a

23  reply message to a sender with instructions that only a human can follow or answer)

24  Further, for the Naor Turing Test to send a message back to a sender with a human-

25  answerable prompt or challenge, it necessarily must have received along with the sender's

27  1950

DEF  SPAM ARREST'S SUPPLEMENTAL
OPPOSITION TO PL 'S
MOT  FOR PRELIM  INJ - 5
Case No  CV03-0077C

NEWMAN & NEWMAN, ATTORNEYS AT LAW, LLP
1001 Fourth Avenue Plaza, Suite 2560
Seattle, Washington  98154
phone (206) 624-6334
fax (206) 624-6348

1  e-mail message an "address field containing a sender's address", as recited in the claims
2  of Cobb and Heiner.

3  Thus, the Naor Turing Test publication, in conjunction with the 1992 IBM
4  Publication, anticipates or renders obvious each of the steps in the Cobb and Heiner
5  methods for filtering unwanted e-mail of receiving an e-mail from a sender, including
6  comparing the sender's address to a list of accepted senders; sending a human-answerable
7  prompt or registration challenge back to the sender which is easily answered by a human
8  (but not a machine); granting access to the recipient; and automatic updating sender
9  whitelists and blacklists   Such process were depended upon in each of the independent
10 claims 1, 17, 24, and 30 in Cobb, and independent claims 1, 5, 12 of Heiner

11 Thus, "as viewed by persons of ordinary skill in the art" of e-mail messaging and
12 spam blocking/filtering it would be recognized that a prompt/challenge step directly
13 proportional to the human real time of composing a personal letter is necessarily present
14 in the 1992 IBM Publication and the Noar Turing Test publications   See Continental Can
15 Co  v. Monsanto Co , 948 F 2d at 1268-69   Further, the use of any servers, such as
16 disclosed and claimed in Hiener or Cobb, is also inherent and easily supplied, as a skilled
17 artisan could take the 1992 IBM Publication teachings and his own knowledge to possess
18 both the inventions claimed in Heiner and Cobb.  Fenton Golf Trust v  Cobra Golf Inc ,
19 1998 U S  Dist. Lexis 8452 (ND. Ill May 20, 1998, (*citing* In re Graves, 69 F 3d 1147,
20 1152 (Fed  Cir. 1995), *aff'd,* 243 F.3d 561 (Fed. Cir. 2000)).

21

22 **B.      Deadbolt, published on July 24, 1997, anticipates Cobb and Heiner.**

23 The teaching of the Deadbolt personal e-mail filter, first published on July 24,
24 1997 ("Deadbolt"), further anticipates and renders obvious both Cobb and Heiner.
25 Deadbolt provides,

26             Each time a message runs afoul of one of the generic filters that you have
              enabled for your personal account, (i e. doesn't meet verification) the
27            message becomes "distrusted" (as opposed to "blacklisted").  Distrusted
              messages are normally bounced back to the sender with a polite note
28            telling the sender that he/she it should send the message again, only this

1    time including our personal pass phrase...if the sender does that the
2    message will get through and also, the sender's address will
     automatically (be) incorporated onto your personal e-mail address
3    whitelist.

4  Newsgroup Posting by Ronald Guilmette, attached as Exhibit H to Luther Declaration

5  Thus, Deadbolt supplies teaching of a "distrusted class" and an "approved class" for the

6  approval and transmission of incoming e-mail messages.  Id  Deadbolt employs a system

7  which screens e-mails at the e-mail server and authenticates the e-mail against the

8  whitelist and blacklist.  Where an e-mail message is rejected, the sender is sent a "polite"

9  message and has the opportunity to conduct a human response (a "personal pass phrase")

10  such that the message may be transmitted to the recipient's email account  Id   The use

11  of server-side filtering and authentication against a human response is relied upon in the

12  claims of both Heiner and Cobb

13        Deadbolt anticipates and renders obvious Cobb and Heiner because it teaches or

14  discloses a process in which (1) a sender transmits an e-mail to a recipient; (2) the e-mail

15  is reviewed against an approved class and a distrusted class; (3) the sender receives a

16  notification of failed transmission/verification, and (4) the sender is invited to retry

17  verification and access of recipient with a human-only answerable prompt.  The

18  incorporation of an e-mail server review (as opposed to filtering only on the recipient's e-

19  mail software program such as Microsoft Outlook) is a further obvious modification, or

20  merely inherent.

21        Deadbolt was invented by Ronald F  Guilmette. Deadbolt was disclosed as early as

22  August 6, 1996 in an article for the online publication CNET News in which Mr.

23  Guilmette states that he began thinking about Deadbolt in 1995 and that he had publicly

24  posted nearly 800 messages regarding his efforts to block and filter unwanted emails.  See

25  Exhibit G to Luther Declaration (CNET article dated February 18, 1997) [5].  Guilmette

26

27        [5]Spam Arrest recognizes the benefit that this Court would have were it to have the live testimony of Mr
     Guilmette or other declarant of the evidence set forth herein   Such direct testimonials were unavailable due to
28   the fact that this matter is at the preliminary injunction stage and Spam Arrest has not had the benefit of formal

DEF  SPAM ARREST'S SUPPLEMENTAL
OPPOSITION TO PL 'S
MOT FOR PRELIM INJ - 7
Case No  CV03-0077C

NEWMAN & NEWMAN, ATTORNEYS AT LAW, LLP
1001 Fourth Avenue Plaza, Suite 2560
Seattle, Washington  98154
phone (206) 624-6334
fax (206) 624-6348

1  discussed Deadbolt in Internet based newsgroups as early as July 24, 1997.  <u>See</u> Exhibit H

2  to Luther Declaration, <u>see also</u> Salon Publication dated September 4, 1997 attached as

3  Exhibit I to Luther Declaration.

4

5  **C.   Burns, published on April 25, 1997, anticipates Cobb and Heiner.**

6       In an April 25, 1997 article by Timothy J Burns ("Burns") there is disclosed an e-

7  mail spam filter system which employs a "call-back" reply requiring,

8           [A] simple, quick but manual operation (on the part of senders) to verify
            that the message is sent by a human, in order to get their messages
9           delivered (emphasis added)

10          By their very nature spammers cannot afford the time to invoke the
            manual bypass for everyone of their victims – any spam which makes it
11          through this filter is likely to have cost the spammer more time to send
            you the message then it takes for you to delete it (emphasis added)
12

13  Newsgroup Posting, attached as Exhibit J to Luther Declaration   Thus, Burns is a

14  reiteration of the teaching of a human-only response system for transmitting emails, in

    this instance a simple human "call-back" reply   As with Deadbolt, Burns employs a
15
    verification against a list of blacklisted senders (or senders on "probation")  <u>Id.</u>  As
16
    described in Burns,
17
            The program as proposed is involved after e-mail has been unpacked, it
18          walks through the mailbox looking for e-mail which is neither from
            registered senders nor those on "probation"...(verification of human
19          entity in progress)  The suspect e-mail is returned to sender with a note
            attached, then it is deleted from the mailbox.
20
            The sender is placed on "probation" for a predetermined amount of time,
21          during which he can get one message through by adding a "key" (human-
            only) response sent to him in the note.
22

23

24  _____

    discovery  Federal Courts acknowledge the reduced evidentiary standard applicable in the context of a
25  preliminary injunction motion  See, e g , Perfect 10, Inc v Cybernet Ventures, Inc , 213 F Supp 2d 1146, 1154,
    n 1 (C D  Cal 2002). For example courts receive and consider hearsay materials in the preliminary injunction
26  context  The dispositive question is whether the evidence is appropriate, given the other factors such as the need
    for expedition and a party's opportunity to conduct discovery  Asseo v  Pan American Grain Co , 805 F 2d 23, 26
27  (1st Cir  1986)  In denying the Motion for a Continuance in this case, this Court recognized Spam Arrest's
    inability to conduct discovery and instructed that it would consider the lack of formal discovery in its ruling on
28  preliminary injunction  See Dkt #28

DEF  SPAM ARREST'S SUPPLEMENTAL            **NEWMAN & NEWMAN, ATTORNEYS AT LAW, LLP**
OPPOSITION TO PL 'S                             1001 Fourth Avenue Plaza, Suite 2560
MOT. FOR PRELIM  INJ - 8                            Seattle, Washington  98154
Case No  CV03-0077C                                  phone  (206) 624-6334
                                                      fax  (206) 624-6348

1   Id. The sender in the Burns article, is returned an e-mail message of non-transmission,

2   and is invited to try again   On this issue, Burns states,

3       The same message, and the "key" can be sent one time more in response
        to another piece of e-mail (i.e. the sender gets a second chance)

4

5   Id   Therefore the combined prior art teachings cited by Spam Arrest, supply each of the

6   elements in the claims of Cobb and Heiner, including, (1) an attempted e-mail

7   transmission to recipient, (2) comparing of e-mail senders address to an accepted list,

    blacklisted list, or probationary ("distrusted") list, (3) sending a message back to sender
8
    with a human-only answerable challenge/prompt in order to gain access to recipient,
9
    inclusive of monitoring; and (4) automatically updated accepted sender lists or blacklists.
10

11

    **D.    Stirling, published on February 20, 1997, anticipates Cobb and Heiner.**
12

13      An anti-spam posting by Ian Stirling published February 20, 1997 ("Stirling")

14  discloses a challenge-response e-mail approval system which requires, as a precondition

15  to receipt of an email that,  "(1) requires human intelligence to figure out (at least the first

16  time); (2) is enough unlike what other folks do to fail existing address-reapers, and (3) is

17  obvious enough to humans that it still useful (unless you want to be anonymous)"   See

18  Exhibit K to Luther Declaration   The Stirling process describes blacklists and a

19  challenge-response system, in which first-time e-mail correspondents are provided a

    challenge, and must send a response in order to have their e-mail get through (aka a
20
    "CRAB" system)   Id
21

22      Thus aside from its own obvious teaching, Stirling provides yet another reiteration

23  of the 1992 IBM Publication, by disclosing a system of (1) receiving an unsolicited e-mail

24  message from a sender, (2) comparing senders' address to accepted list of senders (or

25  blacklist), (3) sending a reply to sender of notice of failed transmission with an invitation

26  to try again, but this time with a human-only answerable CRAB system; (4) monitoring

27  response for correctness, (5) if response correct, forwarding message to recipient; (6)

28  inclusive of automatically updated accepted/blacklists   Therefore, Stirling teaches each

DEF  SPAM ARREST'S SUPPLEMENTAL                    **NEWMAN & NEWMAN, ATTORNEYS AT LAW, LLP**
OPPOSITION TO PL 'S                                         1001 Fourth Avenue Plaza, Suite 2560
MOT  FOR PRELIM  INJ - 9                                          Seattle, Washington  98154
                                                                    phone  (206) 624-6334
Case No  CV03-0077C                                                   fax (206) 624-6348

1  of the essential limitations in the Cobb and Heiner independent claims

2

3  **E.    The Skoll article, published November 15, 1996, anticipates Cobb and Heiner.**

4  The Skoll posting, dated November 15, 1996, teaches and renders obvious Cobb and

5  Heiner ("Skoll")  See Exhibit L to Luther Declaration  Skoll provides for a system of

6  combating unsolicited commercial e-mail by reviewing the system against "trusted

7  addresses" and "known bad addresses " Id. For those e-mails which are from neither a

8  trusted address or a known bad address, Skoll provides for a "random challenge that is

9  very easy for a human to respond to, but next to impossible for a computer " Id.

10  Skoll demonstrates the simplicity and obviousness of Heiner and Cobb in 1996  A

11  newsgroup posting teaches and provides prior art regarding comparing incoming e-mail

12  messages against "whitelists", "blacklists" and simple human verification for those

13  messages that are from senders that are neither whitelisted nor blacklisted

14

15  **F.    The Mail Circuit e-mail handshake verification spam filtering method,**
16  **copyrighted in 1996, anticipates Cobb and Heiner.**

17  The MailCircuit E-Mail Handshake Verification spam filter process, Copyright

18  1996-2002 ("Handshake") discloses yet another human-only answerable prompt or

19  challenge to an e-mail sender, which is reviewed for correctness to gain access to an e-

20  mail recipient  See Exhibit M to Luther Declaration  Handshake teaches exactly what the

21  Cobb patent applicant assured the patent examiner was non-existent in order to gain

22  allowance of this invalid patent.

23  In particular, Handshake discloses a flow chart analysis employing accepted e-mail

24  sender lists (i.e , whitelists), and in the case of an unverified e-mail sender address, sends

25  a verification message to the e-mail sender asking for a positive reply (a "handshake")

26  The verification message is described as a "letter of introduction" and can be timed to

27  allow human-only personal response to obtain permission to send the message and

28  updating of the intended recipient, the verified list is automatically updated.  Id  Non-

DEF  SPAM ARREST'S SUPPLEMENTAL
OPPOSITION TO PL 'S
MOT FOR PRELIM INJ - 10
Case No  CV03-0077C

NEWMAN & NEWMAN, ATTORNEYS AT LAW, LLP
1001 Fourth Avenue Plaza, Suite 2560
Seattle, Washington 98154
phone  (206) 624-6334
fax  (206) 624-6348

1   verified e-mail messages are held in memory for reference, and eventually discarded. The
2   system also includes blocked lists. Id. Thus, the teachings of Handshake challenge
3   verification spam filter method discloses Cobb and Heiner

4       As of this writing, it is unclear the date of original publication of Handshake   The
5   MailCircuit webpage provides for its flow chart analysis as being copyrighted between
6   1996 and 2002. Id   Thus, discovery may produce evidence that Handshake was
7   published as early as 1996

8

9   **G.    Additional human-only prompt/challenge spam filtering method art.**

10      Several other newsgroup postings indicate the obviousness and prior art disclosure
11  of Heiner and Cobb   Each provide for the essential element of human-only response to a
12  prompt/challenge to gain e-mail access to a recipient; the element the Cobb applicant
13  assured that Patent Office was non-existent to gain allowance of each of its independent
14  and dependent claims, and in which the examiner opined was missing in allowing Heiner
15  Those postings include the following

16  1   In January 28, 1997 publication, a challenge-response anti-spam (CRAB) method is
17  discussed, which places the onus on the sender to have a "human level" intelligent
18  response   See Exhibit N to Luther Declaration

19  2   In a January 19, 1997 article by Dave Richards ("Richards"), Richards describes yet
20  another human-only answerable prompt for e-mail access to a recipient is disclosed. See
21  Exhibit O to Luther Declaration. In the Richards's method, e-mails from blocked sender
22  addresses are "bounced" and those on a "go" list are delivered to recipient. The bounced
23  messages are replied to e-mail sender "with a rude message", and an explanation of how
24  to be verified, either by using a code or a human-only answerable response, to
25  successfully get their e-mail message to recipient. The answerable response (prompt or
26  challenge) can be, for example, a simple human-answerable question such as "what color
27  do red and yellow paints mixed together give".

28  //

DEF  SPAM ARREST'S SUPPLEMENTAL
OPPOSITION TO PL 'S
MOT  FOR PRELIM  INJ - 11
Case No  CV03-0077C

NEWMAN & NEWMAN, ATTORNEYS AT LAW, LLP
1001 Fourth Avenue Plaza, Suite 2560
Seattle, Washington  98154
phone  (206) 624-6334
fax  (206) 624-6348

## III.  CONCLUSION

As demonstrated by the prior art provided in the Opposition and herein, Cobb and Heiner are invalid or rendered obvious in light of publications as early as 1992. The employment of screening emails against whitelists and blacklists and requiring non-listed emails be verified by a simple human answerable requirement, was publically available or obvious at the time Heiner and Cobb were submitted to the patent office  Furthermore, the prior art available to Spam Arrest upon preliminary injunction is likely to be just a sampling of the quality and quantity of evidence that could be submitted to the Court should Spam Arrest have the benefit of a full discovery period or if the Court had granted Spam Arrest's motion for a continuance  In light of the standard applied by the Court upon preliminary injunction, Spam Arrest respectfully submits that the Court should deny Plaintiff's motion for a preliminary injunction

DATED this 28th day of April, 2003

Respectfully Submitted,

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

By _____
Derek A  Newman, WSBA No. 26967
Roger M. Townsend, WSBA No. 25525

Attorneys for DEFENDANT SPAM ARREST
LLC

NEWMAN & NEWMAN, ATTORNEYS AT LAW, LLP
1001 Fourth Avenue Plaza, Suite 2560
Seattle, Washington 98154
phone  (206) 624-6334
fax  (206) 624-6348

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 28th day of April, 2003, I caused the foregoing

**DEFENDANT SPAM ARREST'S DISCLOSURE OF NEWLY DISCOVERED PRIOR ART IN**

**SUPPORT OF ITS OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY**

**INJUNCTION; DECLARATION OF JOHN LUTHER; AND CERTIFICATE OF SERVICE** to be

served via the methods listed below on the following parties

**Via U.S. MAIL AND FAX to:**

**L. Rex Sears, Esq.**
**Larry R. Laycock, Esq**
**David R. Wright, Esq.**
**Workman, Nydegger & Seeley**
**1000 Eagle Gate Tower**
**60 E. South Temple**
**Salt Lake City, UT 84111**

**Fax: 801-328-1707**

**Via Legal Messenger to:**

**Steve Parkinson, Esq.**
**Ater Wynne LLC**
**Two Union Square**
**601 Union Street, Suite 5450**
**Seattle, WA 98101**

I declare under penalty of perjury under the laws of the United States and the State

of Washington that the forgoing is true and correct and that this declaration was executed

on April 28th, 2003, at Seattle, Washington

_DIANA Au_
Diana Au